20-1932 from the District of Nebraska, Scott Richardson v. BNSF Railway Company. Very well, Mr. Supernaw, we'll hear from you first. Thank you, your honor, and may it please the court. Bradley Supernaw from the Boucher Law Firm in Lincoln, Nebraska, on behalf of the appellant Scott Richardson. This case comes to this court after the district court granted a defendant's on a pretty straightforward state law claim of constructive discharge and intentional infliction of emotional distress. In the constructive discharge cause of action, the district court added a third element that is not required under Nebraska law. Under Nebraska law, as pointed out in Gavin v. Rogers technical services, there are two elements to a constructive discharge that a reasonable person in the situation would find the working conditions intolerable and that the employer intended to force the employee to quit or could reasonably foresee the employee to quit. In this case, the BNSF, Mr. Richardson is an 18-year employee with BNSF. He's only had one other incident of discipline in that 18 years before the events that took place in this, leading up to this lawsuit. Shortly before, about a year or two before he was terminated, Mr. Richardson's supervisor was retired and a new supervisor came on. He immediately began to harass Mr. Richardson and within a few months, the BNSF began to attempt to terminate Mr. Richardson based on allegations that proved to be false and then made it impossible for Mr. Richardson to complete his required tasks and then attempted to terminate him again when there were errors in that the test that he tried to complete. Finally, there was ongoing harassment from Mr. Richardson's immediate supervisor, including threats of physical violence if he tried to return to work and threats of continued disciplinary action. All of that together would lead a reasonable employee to feel that the working conditions were intolerable and were geared toward attempt trying to get rid of Mr. Richardson or to get him quit. Under the intentional infliction of emotional distress, again those same conduct by BNSF, some of the allegations include false allegations of drunken driving, of dishonesty, of theft from employee property, employer property, pardon me. The repeated bringing of disciplinary actions and threats to continue to bring disciplinary actions and threats of physical violence are certainly outrageous and cause Mr. Richardson severe emotional distress as alleged in the complaint. Counsel, with regard to the constructive discharge claim, what is the source of Mr. Richardson's employment protections? Does he have any protections under Nebraska law that are not encompassed within the collective bargaining agreement? The protections that are sought to be protected under the constructive discharge is to be free of the harassment of the intolerable working conditions. Is he a Natwell employee under Nebraska law? Yes, and they could have terminated him for any reason under Nebraska law, absent the collective bargaining agreement. However, they did not do that. Instead, they chose to go this other route, which is not permissible under Nebraska law. If his right not to be discharged is predicated on the collective bargaining agreement, can a claim for constructive discharge be stated that it's not intertwined with the CBA? Yes, your honor. The claim for constructive discharge is not based on his right to employment under the collective bargaining agreement. It's based on the state law, as I mentioned before, of being free of intolerable working conditions, which is the first element of the constructive discharge cause of action. The state courts in Nebraska have not added the third element that the district court added. The district court tried to add either an unlawful discrimination or whistleblower protection, retaliation. However, there is nothing in, again, in Gavin, I would point to Gavin versus Rogers Technical Services, where they just point out the two elements for the constructive discharge. And not the third. So, neither of those causes of actions require an interpretation of the collective bargaining agreement. BNSF has claimed that Mr. Richardson is trying to relitigate the disciplinary process that he went through, which is not a very reasonable argument, considering that he was successful in those and was supposed to be rehired, was rehired after the first one, and was not rehired after the second one. And as this court has pointed out, and I believe it was Meyer versus Schneck Markets, just because certain facts could be alleged as a breach of a collective bargaining agreement doesn't mean they have to be alleged as a breach of the collective bargaining agreement if they fit within a state law cause of action. And I guess I'm not sure that I have any more to say. If there's no further questions, I would reserve some time for a rebuttal. Thank you for the argument. Mr. Pryor, we'll hear from you. Good morning. I'm David Pryor on behalf of my client, BNSF Railway. I would like to address both the preemption, the Railway Labor Act preemption argument, which was a factual challenge to jurisdiction made before the district court, but then also address how both claims, the intentional fixing claim and the wrongful discharge claim, would be dismissed just under a standard facial challenge if analyzed under a traditional 12b6 standard. You know, the RLA preemption, it's clear in the case law, the preemption pivots on which key elements are doing the heavy legal lifting. If it's a purely subjective claim where a purely subjective motive is doing the heavy legal lifting, such as in Hawaiian Airlines, where the only critical fact and dispute is the motive of the employer, then it's much easier for a claim to be outside of preemption. However, where the claim has objective standards like both of these two, it is much more difficult to avoid preemption because when you have objective standards and you're fundamentally asking the question, what is reasonable? What would a reasonable person do under this situation? Would they find it intolerable? Is the conduct objectively outrageous? It becomes much more difficult. We see that in the cases themselves. If you look at Hawaiian Airlines, page 266, and I'll just quote this one sentence because I don't want to get it wrong. The Supreme Court says the case requires only, quote, the purely factual inquiry into any retaliatory motive of the employer. You see that both in the case law itself and then in the footnote, the set footnote in Hawaiian Airlines, which the court lays out the requirements for the whistleblower standard. And the element that does the heavy lifting is the motive. The other elements of that claim was a claim made and was it of a potential violation of the law. You contrast that to what we have here. This is much closer to the Gore versus TWA case, which I think is the most on point Eighth Circuit case, the Pacific is probably on all fours with this case. But the core concept in Gore is you have four causes of action, false arrest, defamation, negligence, invasion of privacy, all of which have some form of objective standard. But the one that really sort of highlights here in this court went through each of them step by step and how the objective standard tended to make an issue. But it was the privacy one, I think, is sort of the most direct. This court said the standards for the invasion of privacy were either unreasonably obtained information or highly offensive to a reasonable person. So, again, an objective standard in either either prong. But the court said was the duties owed and the reasonableness of the party's actions in these circumstances cannot be evaluated independently from the bargain for terms of the collective bargaining agreement. Same thing here. If you go to Mr. Richardson's petition and you look at the paragraph setting out his eight contentions of the paragraphs 26, six of them clearly are based on false allegations, the due process, he didn't have access to his records, the refusal to let him to exercise his seniority, the threat of further discipline, the failure to reinstate him within 30 days, and the time to respond was too short. They didn't have enough time to respond to the letter. All of those things would be intertwined with the CBA. The other two, the but it's really because it goes back to objectivity. And what I would say is this. If you look at a spectrum, what are the what kinds of claims are easiest to avoid preemption? Which ones are the hardest to avoid preemption? The easiest to avoid preemption have two characteristics. They have a set of elements that are purely subjective that only go to the employer's state of mind. That's number one. Just like a wine. The second thing they have is a set of that is animus based, not pretext based, because animus based evidence, which said, well, the employee didn't really like me once I once I did the act of whistle blue, they were mean to me, or they yelled at me, or they use foul language, or they gave me the cold shoulder. Those are subjectivity much more difficult for make that the preemption argument. But what if the employee said this? So it was a retaliatory claim. So it was a purely motive based, but the employee said, here's my evidence. I know here I know what why they retaliated against me. I needed three witnesses to make out my defense at the investigation. And they only gave me two. Any arbitrator that looked at this would have said, yep, got to have three very complicated case, you got to have three. But the CBA itself says you can only bring two witnesses. That was the only piece of evidence the employee had. So it's pretextual. It's not animus. They say, well, you said you rely on the CBA, but that's a pretext. In that case, I think you would use Hawaiian Airlines would come out differently, because it would be impossible for the employer to make out its its its case without saying no, the only reason I gave you two witnesses, because the CBA says right there, they only have two witnesses. So in this case, it's right within, you know, that that framework, the six pieces of evidence I just went through all of the pretext nature. The other two, the he was, you know, cursed at me. He allegedly threatened me. Those are more along the lines of animus. But because the causes of action themselves require objectivity and not subjectivity like Hawaiian Airlines, this this case still falls within preemption. I think the case most on point is the Seventh Circuit Monroe case. That is a wrongful discharge case like this one. You know, there the court said when the the the plaintiff said, as plaintiffs often do, we said, well, look, my claim is independent of the CBA. It's a it's a wrongful discharge claim under state law. It's not under the CBA. It's independent. The court there said said an uncritical glance suggests that it's independent. But when you actually look at what the employee is claiming as the basis for the cause of action, it's clearly inextricably intertwined. And what did Mr. Monroe claim? He claimed that his disciplinary investigation itself was improper and he claimed that there was a lack of sufficient evidence. Very similar to what Mr. Richardson is claiming here for both of his claims. And also there, the court does talk about the pretext, how pretext has become a little bit more difficult. They talk about the contextual nature of the of the the category of the evidence. So with respect to the preemption, suppose you had a situation where six out of the eight allegations in a count like that required reference to the CBA, but the other two did not. Would that mean that the claim is not the two grounds in my hypothetical as a as a state law claim? Your Honor, if the cause of action was whistleblower retaliation, so the heavy lifting was being done by the subjective intent of the employer, you could probably come up with a set of facts where there were two allegations where it would be very difficult for the railroad or the airline to avoid preemption. But here, because we have the objective, the objective standard in both causes of action, we have to objectively ask ourselves. So we ask ourselves, is it is it objectively extreme conduct? Well, that we may have to look at the CBA to figure that out, because suppose somebody said simply, um, well, this probably wouldn't be in your what if they said, my mother in law likes to use the term packinghouse language. That's how she what she talks about cursing. So what if she said, what if someone said, the basis for my claim is that my intentional infliction claim is that I'm constantly subjected to packinghouse language, that it's out in the field, it's happening all the time. I think you would have to ask yourself the question of whether or not the the the full range of rights in the environment of the employer, both the CBA and the past practice and everything else, whether packinghouse languages is objectively unreasonable. What if what if every arbitrator considered that issue? So so 1000 employees had said, man, I feel like I'm gonna a claim under Rule 62 for unjust treatment, because I have to hear the packinghouse language. What if 1000 out of 1000 said claim denied? Everybody curses at railroads, everybody curses in the field. Now, one employee tries to bring an intentional infliction of emotional distress claim. So I don't I don't want to go into arbitration. I want to try to bring emotion. I just think that that context, that objectivity of whether it is objectively unreasonable, extreme and outrageous, creates a real problem for the plaintiff, even in a more limited set of facts like the one you're suggesting, Your Honor. And I think the same is true for the constructive discharge, because this court has said that the basically the Title VII framework applies. The Title VII framework is would a reasonable person find their working conditions intolerable? If you signed on to a even the company lets you know about on the front end and then later claimed, well, it was intolerable, I'm not sure that you could you could unpack the two. But putting that aside, because I see how four minutes left, even if the RLA preemption argument doesn't hold today, which I think it clearly should under under Gore, there's not enough here on the on space to make up either claim. For the intentional infliction standards, these allegations fall far short of those set out in Nebraska law, whether it's the Heisman case or Dale v. Thomas. There's also a case cited within Dale v. Thomas, which is the Davis v. Texaco case. All of those would say that these types of, you know, the back and forth that employers have with employees just aren't enough. And in the Texaco case, a woman was burned with hot radiator fluid from her car. She had to take off her shirt. She had to partially disrobe. She was given a fender cover by a Texaco employee to cover herself. And then she wanted to go to the hospital. Well, the Texaco employee took a piece of the engine out. So she basically held her hostage until he got the fender cover back. So it's pretty extreme facts. And the court said that's not those facts or the facts in either of the two cases I cited that involved funeral homes. Those facts are more extreme. Secondly, the Nebraska Supreme Court has been very clear that you have to have actual manifestation of severe emotional distress. Here we have the most conclusory allegations. We have one paragraph where he says there were devastating effects, and that's it. And then in the prayer, it says he suffered severe emotional distress. Clearly not enough. I mean, if you look at a case like Dale, there the plaintiff specifically testified to sleeplessness, loss of appetite, embarrassment and nervousness. So physical manifestations, not enough. So then turning to the final claim, the constructive discharge standard is not met. Putting aside whether a reasonable person would find these actions intolerable, the merchant case makes it very clear that to be reasonable, the employee must notify the highest level of administration to give them a chance to correct it. And they also called out this merchant's failure to file a grievance. And here we point to Rule 62 as a basis for filing an unjust treatment claim. There's no dispute anywhere in the record that Mr. Richardson did not go to anyone above his direct supervisors to try to get this rectified if these things actually happened. And moreover, he failed to file a grievance with respect to anything Mr. Hyatt did to him. Finally, I would say just for the record and to be clear about this, we filed a motion to dismiss. Because it was factual, we also put a declaration in the record. Normally, in a lot of these cases, a plaintiff will come back and they will add additional allegations, more specificity, either through an amended complaint or through a counter to our declaration. Mr. Richardson did neither. He stood on his allegations. And so I think that should tell the court something about sort of where these allegations are and whether Mr. Richardson could allege more specificity if he wanted to consistent with the rules of civil procedure. Do you understand the district court to have said that both claims were preempted or only constructive discharge? I read the district court to preempt both but to only address the facial challenge on the intentional infliction claim, not on the constructive discharge claim. So we would be relying on cases like Sager saying this court could affirm on any ground. You mean as to the constructive discharge? Yes, your honor. On the alternative? Yeah. Yeah. The district court reached the intentional infliction you think both ways, said it's preempted, but if it's not preempted, it fails under Nebraska law. Yes, your honor. Yeah. I see I'm out of time. Any further questions from the court? Thank you. Thank you for your argument. Mr. Supernova, we'll hear from you in rebuttal. Thank you, your honor. Just want to point out a couple of things. For example, Gore versus TWA that the appellee relies on heavily and many of the other cases similarly, but Gore versus TWA specifically, the allegations were the claim was for negligence and how TWA carried out the initial investigation. Here, Mr. Richardson doesn't have any issue with how the investigations were carried out. As mentioned before, he ultimately was successful in both instances of, you know, being able to prove that he should not have been discharged. So there's no re-litigating, no attempt to re-litigate, unlike Gore, no attempt to re-litigate the investigation that was done pursuant to the CBA. We also don't have to, the jury or prior effect would not have to interpret the CBA to make a determination on whether something was unreasonable. Based again on the allegations in the complaint, even those that arguably could be tied to the CBA, we don't really need to look at what the CBA says because, you know, whether, for example, on the repeated disciplinary actions, we don't have to know what disciplinary actions were, we don't have to know whether there is, whether they're following their procedure pursuant to the CBA, you know, the mere fact that there were two that, according to their own internal procedures, were, you know, without foundation and threats for additional ones, you know, the constant, being under constant threat of disciplinary actions, unfounded disciplinary actions, itself would be unreasonable. The same could be true, sorry I missed that one, with regards to the threats for physical violence and with the harassment by the immediate supervisor. They don't, you know, if that's common practice on a rail yard, well then there could be evidence that that's common practice on the rail yard that has nothing to do with the CBA. With respect to the intentional infliction of emotional distress, counsel cited Dale and specifically said that the plaintiff in that case testified about what the effects of the distress were. This is, of course, at the pleading stage, not at the evidence stage, and the appellee has not cited anything, either a court rule or case law, that requires the plaintiff to present testimony in its complaint or, you know, to medical records, for example, to its complaint. And so that's just, again, he's looking at something that may be at the summary judgment stage of the case. We're not there yet. We haven't had the discovery. We haven't had the exchange of evidence. We're just looking at what the pleadings are, and based on what the pleadings are, Mr. Richardson has made out the intentional emotional distress claim, as well as the constructive discharge claim. Like Gore, I'm sorry. No, you may proceed. I thought you just wanted one other, you know, Casey cited Monroe. Like Gore, that one, in that case, the plaintiff, as counsel stated, alleged a lack of sufficient evidence and errors in the investigation. Here, there's no allegation of errors in the investigation or, you know, applying with the CBA. So, if there are no further questions, I guess I've done and would submit the case. All right. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course.